**In the Interest of D.D.J.**

**No. 2–02–298–CV.**

Court of Appeals of Texas, Fort Worth.

April 29, 2004.

Cary A. Johnson, Grandbury, Pro Se.

Ross & Harley, P.C. and Deborah K. Hartley, Arlington, for Appellee.

PANEL F: DAUPHINOT, HOLMAN, and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

Appellant C.J., an inmate acting pro se, appeals from the trial court's final order modifying the parent-child relationship and confirming child support arrearages. He raises eight issues on appeal. We reverse and remand.

### I. Factual and Procedural Background

Appellant and D.J. are the parents of D.D.J., who was born in 1997. Appellant and D.J. were divorced in 1998. In the divorce decree, the trial court appointed D.J. as D.D.J.'s joint managing conservator with exclusive right to determine D.D.J.'s primary residence and Appellant as D.D.J.'s joint managing conservator. The decree also contained a standard possession order. Additionally, the court ordered that Appellant pay $450 per month in child support beginning on December 15, 1998 and $85 per month for D.D.J.'s health care as additional child support. The court ordered Appellant's employers to withhold these sums from his earnings.

In December 2000, D.J. filed a motion for enforcement of the child support provisions in the 1998 divorce decree, alleging that, while Appellant had met his $535 monthly child support obligation from December 1998 to December 1999, he had fallen into arrears with respect to the payments due between January 2000 and December 2000. For reasons not apparent from the record, however, on January 9, 2001, D.J. filed a motion to dismiss with prejudice her motion for enforcement. On

the same day, the trial court signed an order that dismissed D.J.'s motion for enforcement and ordered that "the records of the Tarrant County Child Support Office be amended to reflect that no arrearage is owed by [Appellant to D.J.] as of the date of this Order."

Additionally, because D.J. planned to move to California with D.D.J., she and Appellant presented to the court an agreed order modifying some of the terms of their divorce decree, which the court also signed on January 9, 2001. Under the terms of the agreed order, D.J. was allowed to establish D.D.J.'s primary residence without regard to geographic location. The order stated the trial court's findings that D.J. intended to move to California and that Appellant had agreed to this change and to bearing the costs of travel to exercise his rights of visitation of and access to D.D.J. Moreover, acting in accordance with D.J.'s and Appellant's agreement, the court suspended the prior order for periodic child support payments and ordered that Appellant did not owe D.J. any child support payments "at this time or until further order of this Court."

On May 17, 2001, D.J. filed a petition to modify the parent-child relationship and a motion to confirm child support arrearage. D.J. maintained that, because Appellant had not come to visit D.D.J. in California, and therefore had not incurred such transportation costs, the court should modify the January 9, 2001 agreed order by resuming the previously-suspended periodic child support payments. D.J. also alleged that Appellant had failed to pay for a portion of D.D.J.'s health care and requested that the court confirm the ar-

rearages and enter a judgment for the arrearages and interest. In an amended pleading, Appellant requested a temporary order concerning conservatorship of D.D.J., child support, health insurance premiums, and uninsured medical expenses while the case was pending.

Meanwhile, at a time not provided in the record, Appellant was sentenced to seven years' imprisonment for a drug possession offense. On September 21, 2001, the trial court approved an associate judge's report for modification and ordered temporary relief, which modified the December 1998 decree and the January 2001 agreed order.[1] The court modified those two orders in three respects: (1) D.J. was appointed as D.D.J.'s sole managing conservator; (2) Appellant's possession of D.D.J. was to be agreed upon in advance between the parties, supervised by D.J. or either party's parents, and was conditioned upon Appellant passing any random drug or alcohol screening requested by family court services; and (3) Appellant was again required to pay $450 per month in child support beginning on October 1, 2001. The trial court's order stated that medical insurance on D.D.J. would be provided by D.J., the insurance cost would be paid by Appellant, and excess health care costs would be paid equally by the parties. Thus, while the court specifically reinstated the $450 per month periodic payment, it *did not* specifically reinstate the $85 per month periodic payment, which was originally in the 1998 divorce decree.

In 2002, D.J. amended her petition to modify the parent-child relationship and to confirm child support arrearages.[2] In her petition, D.J. alleged that "[Appellant]

---

1. We note that D.J. appeared in person and through her attorney, but neither Appellant nor an attorney representing him appeared before the court in proceedings related to the associate judge's report.

2. The only petition in the record is D.J.'s third amended petition, which was filed on July 15, 2002.

ha[d] had a significant history of alcohol or drug abuse since rendition of the order to be modified" and that he had been sentenced to seven years' confinement for the offense of possession of a controlled substance with an intent to deliver. D.J. again requested that the court appoint her as the sole managing conservator of D.D.J. and modify the rights and duties of the parties in relation to D.D.J. She asked the court to order Appellant to resume making previously suspended child support payments to her in the amount of $450 a month. D.J. also asked the court to determine the amount of child support Appellant owed her for past due payments and to enter a judgment for the arrearages with interest. Additionally, she requested that Appellant pay her attorney's fees and court costs.

In response, Appellant filed a general denial on July 3, 2002 and requested the appointment of an attorney because he did not own sufficient assets to hire a lawyer and because he was incarcerated. The trial court denied Appellant's request for an appointed attorney, advising him that the case did not involve the termination of his parental rights. The court set the case for a final hearing to be held on August 12, 2002.

Because Appellant was not represented by an attorney and was incarcerated, on July 24, 2002, Appellant filed a motion for a bench warrant to attend the final hearing or, alternatively, to participate by teleconference or other alternative means. As we discuss more fully below, the trial court expressly denied Appellant's request for a bench warrant. Then, on August 12, 2002, Appellant filed a document titled "[Appellant's] Response and Objections to [D.J's] Third Amended Petition to Modify Parent Child Relationship and Motion to Confirm Child Support Arrearage." Appellant argued against the modifications requested by D.J., and he attached a document, signed by both himself and D.J., indicating that he had paid $2,100 in child support to D.J. in 2002. He also attached several support letters from friends and family.

The court conducted the final hearing as scheduled on August 12, 2002. D.J. briefly testified about each of her requests, but she offered no other evidence in support of her claims.[3] Appellant did not participate,

---

3. We note that D.J.'s testimony, which was the only evidence produced at the August 12 hearing, spans less than six pages of the nine-page reporter's record. We quote the testimony elicited in support of D.J.'s position that, while Appellant had fallen into arrears on his $450 monthly child support payment, he should continue to pay $450 per month in spite of his incarceration:

> Q. And is it true that during several months of his incarceration you have, in fact, received that child support?
> A. Yes, I have.
> Q. The check was sent to you by [Appellant's] mother?
> A. Yes.
> Q. And the check was on an account that is in [Appellant's] name; is that right?
> A. Yes.
> Q. So even during his incarceration, he has been able to pay several months of child support; is that correct?

> A. That's correct.
> Q. And he has admitted that in papers that he's filed in this Court; is that right?
> A. That's right.
> Q. *So far as we know* even though he's incarcerated, he *apparently* has access to funds?
> A. That's correct.

[Emphases supplied.] On appeal, Appellant has provided us with copies of the checks his mother sent, which appear to be from an account in her name, not Appellant's, and a portion of his 2001 income tax return, but these records are outside the record and cannot be considered for purposes of this appeal. *See Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex.1979). D.J. did not offer these documents or any other evidence at trial in support of the financial circumstances of herself, Appellant, or D.D.J.

other than by his pleadings on file, which the court stated on the record that it had reviewed. On the same day that it heard D.J.'s testimony, the trial court granted all of D.J.'s requested modifications and signed a judgment against Appellant totaling $7,765.62 with interest for child support arrearages, accrued interest, attorney's fees, and costs.

## II. Issues

Appellant enumerates eight issues in his brief. We construe his brief liberally as raising two main challenges: (1) that the trial court abused its discretion in denying his motion for a bench warrant or, alternatively, by failing to consider other effective means of participation, and (2) that the trial court abused its discretion by modifying the parent-child relationship with D.D.J. and in confirming child support arrearages.[4] Appellant also complains about the award of attorneys' fees.

In essence, Appellant argues that he should have been allowed the opportunity to participate in person or by other effective means at the August 12 hearing and that his inability to participate prevented him from rebutting what he characterizes as D.J.'s "conclusory and self serving" testimony or from presenting evidence in support of his position. Consequently, Appellant maintains that the scant evidence presented at the modification proceeding, comprised solely of D.J.'s testimony, is insufficient to support the trial court's modification order, the confirmation of arrearages, and the award of attorney's fees.

This case demonstrates some of the issues that can arise when an incarcerated parent is brought into a lawsuit as a defendant in a petition seeking modification of the parent-child relationship and confirmation of child support arrearages. Because most of the decisions affecting incarcerated parents who are involved in a modification proceeding lie within the discretion of the trial court and because the Texas Legislature has provided little guidance in the family code regarding modification proceedings involving incarcerated parents, a trial court faces the difficult task of acting within its discretion not only in providing for the best interest of the affected child(ren), but also in ensuring and maintaining the integrity of the adversarial process. *See* TEX. FAM.CODE ANN. § 156.401(d) (Vernon Supp.2004) (recognizing release from incarceration to be a material and substantial change in circumstances); *Norris v. Norris*, 56 S.W.3d 333, 338 (Tex. App.-El Paso 2001, no pet.) (noting "[m]ost of the appealable issues in a family law case are evaluated against an abuse of discretion standard"); *see also* Frank J. Wozniak, Annotation, *Loss of Income Due to Incarceration as Affecting Child Support Obligation*, 27 A.L.R.5th 540 (1995 & Supp.2003) (discussing varying approaches taken by jurisdictions concerning incarcerated parents' child support obligations); Jack W. Marr, 22 *Representing Clients with Special Needs*, STATE BAR OF TEXAS ADVANCED FAMILY LAW COURSE, ch. 22, 14–19 (2000) (available by subscription at http://www.texasbarcle.com/publications/ArticleArchives.asp); Jessica Pearson, *Building Debt While Doing Time: Child Support and Incarceration*, JUDGE'S J., Winter 2004, at 4–11.

## III. Access to Court

 In his first issue, Appellant argues that the trial court abused its discretion in denying his request for a bench warrant or, alternatively, by failing to con-

---

4. Appellant's briefing refers us to *Haines v. Kerner*, which holds that a pro se prison inmate's pleadings should be held to less strin-gent standards than those drafted by lawyers. 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972).

sider his request to participate through other effective means. We review a trial court's ruling on a bench warrant request for an abuse of discretion. *In re Z.L.T.,* 124 S.W.3d 163, 165 (Tex.2003). A trial court abuses its discretion if it acts arbitrarily and unreasonably or without reference to guiding principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002).

On July 24, 2002, Appellant filed a "Motion for Bench Warrant to Final Hearing or in the Alternative Motion for Hearing by Tele–Conference with Supporting Affidavit and Brief." Appellant, citing pertinent case law, requested that the court allow him to appear personally and that, in the event the court determined he should not appear in person, it permit him "to proceed by affidavit, disposition [sic], telephone, video-conference, or other effective means." On July 25, 2002, the court signed an order stating that upon consideration of Appellant's request for appearance at the August 12 hearing, the motion was denied. Additionally, at the conclusion of the August 12 hearing, the trial court reiterated on the record in open court that it had previously denied Appellant's request for a bench warrant. The court stated that it had examined the file, the history of the case, Appellant's conviction and period of incarceration, the security interests and costs of bringing Appellant to court, and the likely result of the hearing. The trial court then confirmed that "the request for a bench warrant is denied."

▪ In *Z.L.T.,* the Supreme Court of Texas recently discussed the well-established law governing inmate bench warrant requests. 124 S.W.3d at 165–66. While an inmate, whether a plaintiff or a defendant in a civil action, does not have an automatic right to appear personally in court, he or she likewise does not automatically lose the right to access the courts by virtue of being incarcerated. *Id.* at 165; *see Hudson v. Palmer,* 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984); *In re Marriage of Daugherty,* 42 S.W.3d 331, 335 (Tex.App.-Texarkana 2001, no pet.); *Zuniga v. Zuniga,* 13 S.W.3d 798, 801 (Tex.App.-San Antonio 1999, no pet.), *disapproved in part on other grounds by Z.L.T.,* 124 S.W.3d at 166; *Birdo v. Holbrook,* 775 S.W.2d 411, 414 (Tex.App.-Fort Worth 1989, writ denied); *see also* Jay M. Zitter, Annotation, *State Prisoner's Right to Personally Appear at Civil Trial to Which He Is a Party–State Court Cases,* 82 A.L.R.4th 1063 (1990 & Supp.2004) (discussing inmates' access-to-court issues). When deciding whether an inmate is entitled to appear in person, "the inmate's right of access to the courts must be weighed against the protection of our correctional system's integrity." *Z.L.T.,* 124 S.W.3d at 165.

▪ Following *Stone v. Morris,* 546 F.2d 730, 735–36 (7th Cir.1976), courts of appeals in Texas "have recognized a variety of factors that trial courts should consider when deciding whether to grant an inmate's request for a bench warrant": (1) the cost and inconvenience of transporting the inmate to court; (2) the security risk and potential danger to the court and the public of allowing the inmate to attend court; (3) whether the inmate's claims are substantial; (4) whether a determination of the matter can reasonably be delayed until the inmate is released; (5) whether the inmate can and will offer admissible, non-cumulative testimony that cannot be offered effectively by deposition, telephone,

or otherwise; (6) whether the inmate's presence is important in judging his demeanor and credibility compared with that of other witnesses; (7) whether the trial is to the court or to a jury; and (8) the inmate's probability of success on the merits. *Z.L.T.*, 124 S.W.3d at 165–66; *see Jones v. Jones*, 64 S.W.3d 206, 210 (Tex. App.-El Paso 2001, no pet.), *disapproved in part on other grounds by Z.L.T.*, 124 S.W.3d at 166; *Taylor v. Taylor*, 63 S.W.3d 93, 97 (Tex.App.-Waco 2001, no pet.); *Thomas v. Bilby*, 40 S.W.3d 166, 169 (Tex.App.-Texarkana 2001, no pet.); *Zuniga*, 13 S.W.3d at 801. A key factor is whether the inmate is represented by counsel or is proceeding pro se. *Jones*, 64 S.W.3d at 210; *Dodd v. Dodd*, 17 S.W.3d 714, 717 (Tex.App.-Houston [1st Dist.] 2000, no pet.), *disapproved in part on other grounds by Z.L.T.*, 124 S.W.3d at 166. Further, an inmate's status as a defendant may also weigh in his or her favor. *Taylor*, 63 S.W.3d at 97.

■ In *Z.L.T.*, the supreme court resolved a conflict in the courts of appeals regarding an inmate's burden in a bench warrant request, articulating that an inmate requesting a bench warrant bears the burden of identifying with sufficient specificity the grounds for establishing his or her right to relief. 124 S.W.3d at 166. A "prisoner requesting a bench warrant must justify the need for his presence," and the trial court does not "ha[ve] a duty to go beyond the bench warrant request and independently inquire into the necessi-

ty of an inmate's appearance, regardless of the content of the request." *Id.* For example, the appellant in *Z.L.T.* referenced the *Stone* factors; however, he did not "provide any factual information showing why his interest in appearing outweighed the impact on the correctional system." *Id.* The supreme court stated that "the only pertinent information" in the appellant's request was that he was incarcerated over 200 miles from the trial court and concluded that the trial court did not abuse its discretion in denying his request for a bench warrant because he did not meet his burden. *Id.*

Here, as in *Z.L.T.*, Appellant's request for a bench warrant cited the *Stone* factors, but he did not provide factual information to enable the court to balance the factors. *See id.* As factual support for his motion, Appellant stated that he was incarcerated in the Eastham Unit in Loveland, Texas, he was married to and later divorced from D.J., and they adopted D.D.J. during the marriage. In accordance with the holding in *Z.L.T.*, because Appellant did not justify the need for his presence in his request for a bench warrant, we cannot say that the trial court abused its discretion in denying Appellant's motion for a bench warrant.[5] *See id.* at 166.

■ We now turn to the issue of whether the trial court abused its discretion in ruling upon Appellant's request to participate in the modification proceeding

5. In support of her position that the trial court did not abuse its discretion in denying Appellant's request to appear in person, D.J. cites *Najar v. Oman*, in which the Austin Court of Appeals held that a trial court did not abuse its discretion in denying an inmate's request for a bench warrant in a parental termination case. 624 S.W.2d 385, 387 (Tex.App.-Austin 1981, writ ref'd n.r.e.), *cert. denied*, 457 U.S. 1108, 102 S.Ct. 2909, 73 L.Ed.2d 1317 (1982). D.J. cites the dicta

following the court's holding in which the opinion states that "the record reveals no effort by appellant to testify by deposition" under a former rule of civil procedure. *Id.* at 387–88. *Najar*, however, is distinguishable from the case before us because the inmate in *Najar* was represented by counsel at trial. *Id.* at 387. Moreover, the inmate's counsel was present and had the ability to cross-examine witnesses and to present evidence. *Id.*

by a telephone conference, a video conference, or by alternative means. As we have already mentioned, the trial court twice expressly denied Appellant's motion for a bench warrant. In both instances, the court did not reference or expressly rule on his request to participate by alternative means. However, by proceeding to trial without allowing Appellant the opportunity to participate by alternative means, "it is clear that the trial court implicitly denied [Appellant's] request." *See* TEX.R.APP. P. 33.1(a)(2); *Z.L.T.*, 124 S.W.3d at 165. Thus, we review the trial court's implicit denial of Appellant's request to participate by alternative means.

D.J. directs us to *In re B.R.G.*, 48 S.W.3d 812, 820 (Tex.App.-El Paso 2001, no pet.). In *B.R.G.*, the court found no abuse of discretion in the trial court's denial of an inmate's request for a bench warrant. *Id.* The court in *B.R.G.* stated that while the trial court "did not bar [appellant] from proceeding by affidavit, deposition, telephone, or other effective means," the inmate "has not demonstrated why those other means would not have been effective, or how he had been prevented from presenting his case to the trial court." *Id.*

Neither appellant in *B.R.G.* or *Z.L.T.*, however, specifically asked to participate by alternative means in the event the trial court denied their respective motions for a bench warrant. While D.J. acknowledges in her brief that Appellant's motion for a bench warrant specifically mentions a video teleconference as one alternative to his personal appearance, she argues that there is nothing in the record to suggest that he took any steps to arrange a teleconference

or any other means of getting his testimony before the trial court.

The record indicates, however, that after the trial court summarily denied Appellant's request for a bench warrant, he filed a pleading outlining his position as to every issue that D.J. planned to raise at the modification proceeding, included letters of support and information concerning child support payments he had made to D.J., and stated his responses to D.J.'s third amended petition.[6] When the trial court denied Appellant's request for a bench warrant by written order, it did not mention Appellant's specific request to participate by alternative means. Then at the August 12 hearing, while confirming its prior order and stating that it had reviewed the file, the court detailed its basis for denying Appellant's request for a bench warrant; however, the court did not indicate that it had allowed or even considered allowing Appellant to participate by other means. Thus, from the reasons stated by the court on the record concerning its express denial of Appellant's request for a bench warrant, it is evident that the court implicitly denied Appellant's request to participate by alternative means without even considering alternative means of participation.

We agree with the approach taken by the San Antonio Court of Appeals in *Lann v. La Salle County*, No. 04–02–00005–CV, 2003 WL 141040, at *1 (Tex. App.-San Antonio Jan.22, 2003, no pet.) (memo.op.). In discussing an inmate's right of access, *Lann* states:

"[A]ll litigants who are forced to settle disputes through the judicial process have a fundamental right under the federal constitution to be heard at a mean-

---

6. Appellant's pleading includes an unsworn declaration that comports with the requirements enunciated in chapter 132 of the civil practice and remedies code, which permits Appellant's use of an unsworn declaration in lieu of a sworn declaration. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 132.001–132.003 (Vernon 1997).

ingful time in a meaningful manner." [*Dodd,* 17 S.W.3d at 717 quoting *Nichols v. Martin,* 776 S.W.2d 621, 623 (Tex. App.-Tyler 1989, no writ) (citing *Boddie v. Connecticut,* 401 U.S. 371, 377–78, 91 S.Ct. 780, 785–86, 28 L.Ed.2d 113 (1971)), *disapproved in part on other grounds by Z.L.T.,* 124 S.W.3d at 166.] Thus, "[t]he right of a prisoner to have access to the courts entails not so much his personal presence as the opportunity to present evidence or contradict the evidence of the opposing party." *Dodd,* 17 S.W.3d at 717. "Should the court find that the pro se . . . inmate in a civil action is not entitled to leave prison to appear personally in court, then the prisoner *should be allowed to proceed by affidavit, deposition, telephone, or other effective means." Id.* (quoting *Byrd v. Attorney General,* 877 S.W.2d 566, 569 (Tex.App.-Beaumont 1994, no writ)[, *disapproved in part on other grounds by Z.L.T.,* 124 S.W.3d at 166] ).

2003 WL 141040, at * 1.

Here, the trial court denied Appellant's motion in its entirety and made no accommodation for Appellant to participate effectively in the proceeding. Like the *Lann* court, we take no issue with the trial court's decision to disallow Appellant's personal appearance. *See id.* In denying Appellant's request to participate at trial, however, the trial court should have considered permitting Appellant to proceed by other effective means, such as the telephone conference he had expressly requested in his motion. *See id.; see also Jones,* 64 S.W.3d at 211–12 (holding trial court abused its discretion by denying appellant's motion for continuance after it denied his request for bench warrant, in part, because it did not consider "viable alternative options of participation"); *Creekmore v. Creekmore,* No. 09–98–257–CV, 1999 WL 562742, at * 2–3 (Tex.App.-Beaumont 1999, no pet.) (not designated for publication) [7] (holding trial court abused its discretion by failing to allow appellant to participate in a hearing after appellant had pursued his defense with diligence and all means available to him).

The Supreme Court of Texas has stated, Although a goal of our system is to resolve lawsuits with "great expedition and dispatch and at the least expense," the supreme objective of the courts is "to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law." TEX.R. CIV. P. 1. This means that "convenience and economy must yield to a paramount concern for a fair and impartial trial." [*In re Ethyl Corp.,* 975 S.W.2d 606, 613 (Tex.1998).] And basic to the right to a fair trial—indeed, basic to the very essence of the adversarial process—is that each party have the opportunity to adequately and vigorously present any material claims and defenses.

*Southwestern Refining Co., Inc. v. Bernal,* 22 S.W.3d 425, 437 (Tex.2000) (discussing the procedural device of class actions). We think these considerations come into play here, where the trial court is balancing the inmate's right of access to the courts by effective means against the protection of our correctional system's integrity. *See* TEX.R. CIV. P. 1; *Z.L.T.,* 124 S.W.3d at 165; *Bernal,* 22 S.W.3d at 437. We conclude that the trial court abused its discretion in failing to consider Appellant's request to participate at trial by alternative means, and we sustain his first issue. *Dodd,* 17 S.W.3d at 717.

---

7. *See* TEX R.APP. P. 47.7 (providing that unpublished cases may be cited, although they have no precedential value).

In this case, Appellant functions in the role as the defendant in a civil suit concerning his child D.D.J. Further, Appellant is a defendant with limited resources, who is both incarcerated and unrepresented by an attorney. To avoid issuing an advisory opinion, we do not reach the merits of Appellant's remaining issues. *See* TEX. R.APP. P. 47.1; *Valley Baptist Med. Ctr. v. Gonzalez,* 33 S.W.3d 821, 822 (Tex.2000). However, we express our grave concerns about the paucity of evidence supporting D.J.'s claims. We remain confident that further proceedings that are truly adversarial will ensure that D.J. carries her evidentiary burden on each of her claims.

## IV. Conclusion

Having sustained Appellant's first issue, we reverse the trial court's judgment and remand this case for proceedings consistent with this opinion.