COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-342-CV

 

 

IN THE INTEREST OF A.L.W., 

MINOR CHILD

 

                                                    

                                                                                                        

 

                                              ------------

 

            FROM
THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Introduction








Appellant C.L.W. appeals the
trial court=s order
terminating her parental rights to her daughter, A.L.W.  In her first six points, appellant argues
that the evidence is legally and factually insufficient to support any of the
three statutory grounds for termination pleaded by the Texas Department of
Family and Protective Services (TDFPS).  See
Tex. Fam. Code Ann. ' 161.001(1)(D), (E), (O) (Vernon Supp. 2007).  Appellant also argues that the trial court
erred in overruling her objection to the State=s standing to contest her indigency for purposes of appointment of
appellate counsel. 

Background Facts

In January 2006, appellant
admitted that she had done methamphetamines, while on probation for felony auto
theft.  In March 2006, appellant
discovered that she was pregnant.  A.L.W.
was born ten weeks premature on July 29, 2006. 
On August 31, 2006, TDFPS received a referral alleging that appellant
had physically abused A.L.W.  On
September 11, 2006, TDFPS removed A.L.W. while A.L.W. was still in the hospital
because of the referral and appellant=s history of drug abuse. 
Appellant=s other two
children, C.L. and C.D., had been removed in June 2005 because of appellant=s drug use and neglectful supervision.[2]  TDFPS placed all of the children with
appellant=s father
Roger.[3]









In May 2007, doctors
diagnosed A.L.W. with cerebral palsy. 
She will probably never be able to walk, talk, or care for herself.  She has difficulty eating because of a high
palate and muscular problems in and around her mouth.  In addition, A.L.W. requires special
assistance and equipment to bathe.  She
is unable to sit up and will continue to struggle with other basic life
skills.  A.L.W. has extensive muscle
problems and requires constant attention. 


In November 2006, appellant
again tested positive for drugs after a hair follicle test.  In January and February 2007, appellant admitted
to using drugs, and urinary analysis (UA) and hair follicle tests confirmed
that she was positive for both methamphetamines and cocaine.  In the early morning hours of February 22,
2007, police arrested appellant for public intoxication after she became drunk
and got in a fight with a girl at a bar. 
Appellant missed her TDFPS hearing later that day and spent three months
in jail.  

On March 18, 2007, while
appellant was in jail, A.L.W. went to live with appellant=s half-sister, Penny G., in Colorado. 
Although TDFPS had initially placed A.L.W. with Roger, he gave A.L.W. to
appellant=s mother,
Sandra T., without telling TDFPS.  Sandra
then sought to have A.L.W. placed with Penny. 
Penny and her husband were state troopers, and they had three
children.  They welcomed A.L.W. into
their home and provided her with therapy and medical care.  Penny wanted to adopt A.L.W. 








On May 13, 2007, appellant
was released from jail.  By June 2007,
appellant had not participated in out-patient drug treatment or counseling,
attended Alcoholics Anonymous (AA) or Narcotics Anonymous (NA) meetings, or
submitted to random drug tests. 

The termination bench trial
was held on July 25 and September 14, 2007. 
Shelby Johnson, a TDFPS caseworker assigned to appellant=s case since August 2006, testified that appellant had a pattern of
not taking an active role in her service plan until TDFPS reached the point of
terminating her parental rights.  For
example, in C.L.=s. and C.D.=s case, appellant would not participate in her required service plan
until she thought she would lose custody of her sons, and then she would become
more serious about completing her program. 
Once TDFPS gave custody of C.L. and C.D. to her father, appellant
discontinued her services.  








Johnson testified that
appellant had two years to complete the services requested by TDFPS in C.L.=s and C.D.=s case, but
appellant had not yet resolved her issues. 
Johnson had concerns about appellant=s long-term abilities as a parent, her pattern of inconsistency, and
her refusal to take responsibility for her actions.  Johnson stated that appellant had not done
what was needed to regain full custody of her sons, and unlike A.L.W. they do
not have special needs.  Johnson
testified that she never received documentation that appellant attended NA or
AA meetings.  Appellant told Johnson that
she did not want to attend NA meetings because she would see old friends, but
Johnson testified that she did not believe appellant was being honest or
serious.  Johnson believed that appellant
just did not want to go to the meetings. 
Johnson testified that she had worked with appellant for three years and
did not believe anything appellant said because she had consistently lied
throughout the case.  Johnson recommended
that appellant=s parental
rights be terminated based on her failure to comply with her service plan. 








CASA volunteer June Splain,
who became involved with appellant=s case in October 2006, testified regarding appellant=s employment.  She stated that
she was unable to verify three of appellant=s previous places of employment. 
Additionally, Splain never received any documentation from appellant
regarding her employment or her AA or NA classes.  Splain testified that appellant completed
parenting classes and a psychological evaluation, but appellant did not
complete the follow-up requirements of the psychological evaluation or comply
with the counseling order.  Splain also
testified that A.L.W. needed a home with stability, consistency, nurturing, and
love, which appellant had not been able to provide but Penny had.  Additionally, Splain testified that appellant
and Roger were in denial about A.L.W.=s condition and disagreed that she had needed therapy
immediately.  Appellant did not
understand the type of daily care and therapies that A.L.W. required.  Splain stated that appellant was not in
compliance with her service plan and did not have the required skills to care
for A.L.W.  She believed that it was in
A.L.W.=s best interest for appellant=s parental rights to be terminated. 

Nicole Jordan testified that
she had been appellant=s NA sponsor
for two weeks and that appellant had been clean for six or seven months.  She stated that they talked on a daily
basis.  She believed that appellant
wanted to succeed and that she was a protective and caring mother.  She testified that she had seen changes in
appellant, such as more love and compassion.

Appellant=s father, Roger, testified that he had seen dramatic changes in
appellant=s life; for
example, she did not have an attitude anymore, and she was not aggressive.  He testified that appellant was more
understanding with her sons and not as selfish. 
He also stated that appellant needed more time to make additional
changes, but she was headed in the right direction.








Appellant=s mother, Sandra, testified that appellant had sporadically lived with
her until January 2006 when Sandra told her to move out because appellant was
staying out all night.  She stated that
they had not always had a good relationship and that appellant had been angry,
but appellant had changed in the last three months.  Sandra testified that appellant was no longer
angry, was more focused and relaxed, and had apologized for the past. Appellant=s relationship with C.L. and C.D. had also changed; for example,
appellant interacted with them much better, and they seemed happy with her.
Sandra testified that she had never seen a change like this in appellant, and
she would not be testifying in court if she did not think appellant had
changed. Sandra believed that appellant needed more time but that she was
finally going in the right direction.

Sandra=s husband and appellant=s stepfather, Gary T., agreed with Sandra and testified that appellant
had recently become a much better parent. 
He stated that appellant was more level, balanced, and had taken
responsibility for her actions.  Because
he was also a former drug addict, Gary testified that when appellant cut ties
with her drug friends, he knew that she was serious.  Gary also testified that appellant needed
more time to make these changes.

Kade Wall, appellant=s boyfriend, testified that they had been together since February
2007.  He stated that he had seen changes
in her temperament; for example, she does not fight with her family
anymore.  Wall testified that he and
appellant had plans for a long-term relationship and planned to buy a house. He
also testified that appellant had not had any contact with her drug friends and
made a lot of progress.  He stated he was
prepared to take care of A.L.W. if something happened to appellant.








After Wall=s testimony, the trial court recessed until appellant=s counselor could testify.  The
trial court reconvened on September 14, 2007. 
Michelle Greer, a professional counselor, testified that appellant began
seeing her in February 2006.  She stated
that she and appellant had met for fourteen sessions and that she had last seen
appellant in August 2007.  Greer
testified that appellant had not been sober for the required six to eight
months but that she had made progress. 
However, Greer also believed that appellant could not maintain sobriety
outside of jail and could not care for A.L.W. 
Additionally, Greer testified that appellant had not accepted responsibility
for her actions and was at risk for relapsing as she had done previously. 

The trial court determined
that appellant (1) knowingly placed or knowingly allowed A.L.W. to remain in
conditions which endangered her physical and emotional well-being, (2) engaged
in conduct or knowingly placed A.L.W. with persons who engaged in conduct which
endangered her physical or emotional well-being, (3) failed to comply with
provisions of her service plan, and that (4) termination was in A.L.W.=s best interest.  See Tex. Fam. Code Ann. '' 161.001(1)(D), (E), (O) & (2). 
Appellant timely filed this appeal. 

 

 

 








Standard of Review

A parent=s rights to Athe
companionship, care, custody, and management@ of his or her children are constitutional interests Afar more precious than any property right.@  Santosky v. Kramer, 455
U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d
534, 547 (Tex. 2003).  AWhile parental rights are of constitutional magnitude, they are not
absolute.  Just as it is imperative for
courts to recognize the constitutional underpinnings of the parent-child
relationship, it is also essential that emotional and physical interests of the
child not be sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d
17, 26 (Tex. 2002).  In a termination
case, the State seeks not just to limit parental rights but to end them
permanentlyCto divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right to inherit.  Tex. Fam. Code Ann. ' 161.206(b) (Vernon Supp. 2007); Holick v. Smith, 685 S.W.2d
18, 20 (Tex. 1985).  We strictly
scrutinize termination proceedings and strictly construe involuntary
termination statutes in favor of the parent. 
Holick, 685 S.W.2d at 20-21; In re E.M.N., 221 S.W.3d 815,
820 (Tex. App.CFort Worth
2007, no pet.).








In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the family
code, the petitioner must establish one ground listed under subdivision (1) of
the statute and must also prove that termination is in the best interest of the
child.  Tex.
Fam. Code Ann. ' 161.001; In
re J.L., 163 S.W.3d 79, 84 (Tex. 2005). 
Both elements must be established; termination may not be based solely on
the best interest of the child as determined by the trier of fact.  Tex. Dep=t of Human Servs. v. Boyd, 727 S.W.2d
531, 533 (Tex. 1987).

Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.  Tex. Fam. Code Ann. '' 161.001, 161.206(a); In re J.F.C., 96 S.W.3d 256, 263 (Tex.
2002).  This intermediate standard falls
between the preponderance standard of ordinary civil proceedings and the
reasonable doubt standard of criminal proceedings.  In re G.M., 596 S.W.2d 846, 847 (Tex.
1980); In re C.S., 208 S.W.3d 77, 83 (Tex. App.CFort Worth 2006, pet. denied). 
It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex.
Fam. Code Ann. ' 101.007
(Vernon 2002).

Legal sufficiency








In reviewing the evidence for
legal sufficiency in parental termination cases, we must determine whether the
evidence is such that a fact-finder could reasonably form a firm belief or
conviction that the grounds for termination were proven.  In re J.P.B., 180 S.W.3d 570, 573
(Tex. 2005).  We must review all the
evidence in the light most favorable to the finding and judgment.  Id. 
This means that we must assume that the fact-finder resolved any
disputed facts in favor of its finding if a reasonable fact-finder could have
done so.  Id.  We must also disregard all evidence that a
reasonable fact-finder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable fact-finder could, and disregard contrary evidence unless a
reasonable fact-finder could not.  Id.

We must therefore consider
all of the evidence, not just that which favors the verdict.  Id.  But we cannot weigh witness credibility issues
that depend on the appearance and demeanor of the witnesses, for that is the
fact-finder=s
province.  Id. at 573, 574.  And even when credibility issues appear in
the appellate record, we must defer to the fact-finder=s determinations as long as they are not unreasonable.  Id. at 573.

Factual sufficiency








In reviewing the evidence for
factual sufficiency, we must give due deference to the fact-finder=s findings and not supplant the judgment with our own.  In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).  We must determine whether,
on the entire record, a fact-finder could reasonably form a firm conviction or
belief that the parent violated subsection (D) or (E) of section 161.001(1) and
that the termination of the parent=s parental rights would be in the best interest of the child.  C.H., 89 S.W.3d at 28.

Endangerment Findings

In appellant=s first through fourth points, she argues that the evidence is legally
and factually insufficient to support the trial court=s determination that she (1) knowingly placed or knowingly allowed
A.L.W. to remain in conditions or surroundings that endangered her physical or
emotional well-being and (2) engaged in conduct or knowingly placed A.L.W. with
persons who engaged in conduct that endangered her physical or emotional
well-being.  See Tex. Fam. Code Ann. ' 161.001(1)(D), (E).








Endangerment means to expose
to loss or injury, to jeopardize.  Boyd,
727 S.W.2d at 533; In re J.T.G., 121 S.W.3d 117, 125 (Tex. App.CFort Worth 2003, no pet.). 
Under subsection (D) of family code section 161.001(1), we must examine
the evidence related to the environment of the child to determine if the
environment was the source of the endangerment to the child=s physical or emotional well-being. 
J.T.G., 121 S.W.3d at 125; In re D.T., 34 S.W.3d 625, 632
(Tex. App.CFort Worth
2000, pet. denied).  Conduct of a parent
in the home can create an environment that endangers the physical or emotional
well-being of a child.  J.T.G.,
121 S.W.3d at 125; In re W.S., 899 S.W.2d 772, 776 (Tex. App.CFort Worth 1995, no writ).  For
example, parental and caregiver illegal drug use and drug-related criminal
activity support the conclusion that the child=s surroundings endanger her physical or emotional well-being.  J.T.G., 121 S.W.3d at 125.

Under subsection (E), we must
determine whether evidence exists that the endangerment of the child=s physical well-being was the direct result of the parent=s conduct, including acts, omissions, or failures to act.  Id. 
Additionally, termination under section 161.001(1)(E) must be based
on more than a single act or omission; a voluntary, deliberate, and conscious
course of conduct by the parent is required. 
Tex. Fam. Code Ann. ' 161.001(1)(E); D.T., 34 S.W.3d at 634.  However, it is not necessary that the parent=s conduct be directed at the child or that the child actually suffer
injury.  Boyd, 727 S.W.2d at 533; J.T.G.,
121 S.W.3d at 125.








To determine whether
termination is necessary under subsection (E), courts look to parental conduct
before and after the child=s birth.  J.T.G., 121
S.W.3d at 125; In re D.M., 58 S.W.3d 801, 812 (Tex. App.CFort Worth 2001, no pet.).  A
mother=s drug use during pregnancy may amount to conduct that endangers the
physical and emotional well-being of the child. 
J.T.G., 121 S.W.3d at 125; In re K.M.B., 91 S.W.3d 18, 25
(Tex. App.CFort Worth
2002, no pet.).  Additionally, drug
addiction and its effect on a parent=s life and ability to parent may establish an endangering course of
conduct as well.  J.T.G., 121
S.W.3d at 125-26.

Imprisonment alone does not
constitute endangering conduct, but it is a factor that the trial court can
consider on the issue of endangerment.  Boyd,
727 S.W.2d at 533-34; D.M., 58 S.W.3d at 812.  The State, however, does not need to show
that incarceration was a result of a course of conduct that endangered
the child; it only needs to show incarceration was a part of a course of
conduct that endangered the child.  D.M.,
58 S.W.3d at 812.  Thus, if the evidence,
including imprisonment, proves a course of conduct that has the effect of endangering
the child, the requirement of subsection (E) is met.  Boyd, 727 S.W.2d at 533-34; D.M.,
58 S.W.3d at 812.

Analysis

The evidence shows that
appellant continuously abused drugs, even during her pregnancy.  Appellant began using drugs when she was
sixteen and continued doing drugs until a few months before the trial.  Appellant used drugs before and after TDFPS
removed her two sons, C.L. and C.D., while pregnant with A.L.W., and after
TDFPS removed A.L.W.








Additionally, appellant had
three years to participate in her service plan and get drug treatment, but at
the time of trial, appellant had just started her drug treatment program, which
had been one of TDFPS=s main
concerns.  The record demonstrates that
although appellant completed in-patient drug rehab, she did not participate in
out-patient treatment.  Appellant testified
that she attended NA and AA meetings although she did not provide documentation
to Johnson or Splain.  Appellant had
maintained street sobriety for two to three months before trial and testified
that she voluntarily took UAs every Monday and Friday. 

The record also demonstrates
that appellant did not complete her service plan or probation requirements,
which included securing employment, obtaining housing, and paying child
support.  However, appellant testified that
she had completed all of her service plan requirements except for attending NA
meetings five times a week or having a job for the required six months.  She stated that she attended NA and AA
meetings from July 2006 until January or February 2007, but she did not provide
TDFPS with any documentation. Appellant also testified that, at the time of
trial, she was involved in intensive outpatient treatment four times a week and
attended NA meetings once a week. 








Appellant also testified that
she had had a job for the past two months. She admitted that she had not worked
regularly throughout  A.L.W.=s case, but she had been working at the 440 Ranch the past two
months.  At the time of trial, appellant
lived with boyfriend Wall in an apartment. 
She also got her GED. 

Appellant had not paid child
support at the time of trial, but she testified that she had the money and
tried to make payments but was told that the account was not set up.  However, Johnson testified that she did not
know what appellant was talking about and that appellant had never asked her
for help with the account.[4]


The record shows that
appellant completed parenting classes, although she did not attend the final
review session.  Appellant also completed
her psychological evaluation although did not follow through with her doctor=s recommendations.  She also
admitted that she violated her service plan by committing criminal offenses.








Additionally, the record
demonstrates that every time appellant used methamphetamines, she also engaged
in criminal activity.  As a result of
appellant=s criminal
activity, she had been in jail or on probation before and after A.L.W.=s birth.  For example, police
arrested appellant for DWI and possession of methamphetamines in Denton County
in January 2003.  Appellant received five
years probation for those charges and was placed on house arrest for eight
months.  On August 19, 2006, police
arrested appellant for public lewdness; the trial court revoked her probation
and appellant went to jail until April 2005. In September 2005, police arrested
appellant for felony auto theft. 
Appellant received probation and entered an inpatient drug treatment
program, but the trial court revoked her probation when she tested positive for
drugs in March 2006.  In November 2006,
appellant=s hair
follicle exam tested positive for methamphetamines, although appellant
testified that she did not use methamphetamines; she stated that she was in a
room where her friends were using drugs. 
In February 2007, police arrested appellant for public intoxication and
she spent three months in jail.  From
A.L.W.=s birth until the time of trial, appellant had been in jail three
months of her twelve-month life for probation violations.  








Appellant=s continuous abuse of illegal drugs threatened A.L.W.=s physical and emotional well-being. 
Additionally, A.L.W. suffered from cerebral palsy and required constant
care and supervision.  But see In re
D.J.J., 178 S.W.3d 424, 429-30 (Tex. App.CFort Worth 2005, no pet.) (holding evidence insufficient to prove
endangerment because there was no evidence that parent=s drug use created a dangerous environment).  Appellant testified that A.L.W.=s prematurity was linked to her cerebral palsy, not to appellant=s drug use.  Appellant testified
that she had made provisions for A.L.W. at the Scottish Rite Hospital and found
a retired nurse to care for her during the day. 
However, Penny testified that Roger, Sandra, and appellant told her that
although A.L.W. was born premature, nothing was wrong with her.  Penny stated that if A.L.W. had received
therapy before coming to her home, A.L.W. would have been further along in her
development. 

Although appellant testified
that she needed more time to work on her life, TDFPS gave appellant longer than
most parents to make changes and get her life in order, but she had continued
the same cycle of drug abuse and criminal activity.  The record shows that appellant repeatedly
engaged in a voluntary, deliberate, and conscious course of conduct related to
drug use, criminal activity, unemployment, and instability.  Tex.
Fam. Code Ann. ' 161.001(1)(D),
(E); D.T., 34 S.W.3d at 634.                 








Based on our review of the
entire record, we conclude that a factfinder could reasonably form a firm
belief or conviction that appellant (1) engaged in conduct that endangered the
physical or emotional well-being of A.L.W. and (2) knowingly placed or
knowingly allowed her child to remain in conditions or surroundings that
endangered her physical and emotional well-being.  See Tex.
Fam. Code Ann. '
161.001(1)(D), (E).  Therefore, we hold
that the evidence is legally and factually sufficient to support the trial
court=s findings under section 161.001(1)(D) and (E).  Id.; see In re S.B., 207 S.W.3d
877, 885 (Tex. App.CFort Worth
2006, no pet.).  We overrule appellant=s first, second, third, and fourth points.

Failure to Comply with Court
Order 

In appellant=s fifth and sixth points, she claims that the evidence was legally and
factually insufficient to terminate her parental rights for failure to comply
with the provisions of a court order necessary to obtain the return of A.L.W.  See Tex.
Fam. Code Ann. '
161.001(1)(O).  

Only one finding under
section 161.001(1) is necessary to support a judgment of termination.  Id. ' 161.001(1); In re K.A.S., 131 S.W.3d 215, 225 (Tex. App.CFort Worth 2004, pet. denied); D.M., 58 S.W.2d at 813.  Because we conclude that there is both
legally and factually sufficient evidence to support the trial court=s findings under family code section 161.001(1)(D) and (E), we need
not address appellant=s remaining
points with respect to the trial court=s finding under section 161.001(1)(O). 
Tex. Fam. Code Ann. ' 161.001(1)(D), (E), (O); see Tex. R. App. P. 47.1; K.A.S., 131 S.W.3d at 225.

Appellant=s Objection to the State=s Standing to Contest Her Indigency

In her seventh point,
appellant argues that the trial court erred in overruling her objection to the
State=s standing to contest her indigency for purposes of appointment of
appellate counsel and a free reporter=s record.  








Because the trial court found
appellant indigent, appointed appellate counsel, and ordered a free reporter=s record, appellant=s issue on appeal is moot.  Valley
Baptist Med. Ctr. v. Gonzalez, 33 S.W.3d 821, 822 (Tex. 2000).  To avoid issuing an advisory opinion, we do
not address appellant=s seventh point.  Id.; see also In re D.D.J., 136 S.W.3d
305, 315 (Tex. App.CFort Worth
2004, no pet.).

Conclusion

Having overruled all of
appellant=s
dispositive points, we affirm the trial court=s judgment.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL F:    LIVINGSTON, WALKER, and MCCOY, JJ.

 

DELIVERED:
April 17, 2008

 











[1]See Tex. R. App. P. 47.4.





[2]In
December 2006, the trial court signed the final order in C.L.=s and
C.D.=s
case and appointed appellant=s father, Roger W., as the
boys=
primary managing conservator and appellant as possessory conservator. 

 





[3]A.L.W.=s
alleged father, C.M.L., could not be located and did not appear at trial.  The trial court terminated his parental
rights on September 14, 2007.  He did not
appeal that order.





[4]At
trial, the trial judge arranged an order for appellant to pay her child support
to the court=s
registry during the afternoon recess.