

## NUMBER 13-11-00592-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF Z.M.R., A CHILD

**On appeal from the 267th District Court
of Victoria County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Chief Justice Valdez**

Proceeding pro se, appellant, David George Rodriguez, appeals the trial court's foreclosure of his inmate trust account for child support arrearages. By three issues, Rodriguez contends that the trial court abused its discretion by (1) denying his request for a bench warrant or in the alternative to appear at the foreclosure hearing via teleconference or by video, (2) applying section 154.062 of the family code retroactively, and (3) improperly defining "net resources" pursuant to current law. We affirm.

## I. BACKGROUND

In 1995, the trial court ordered Rodriguez to pay $130 per month in child support. Subsequently, Rodriguez was convicted of capital murder and received two life sentences. Rodriguez did not pay child support as ordered.

In 2011, the Office of the Attorney General (the "OAG") perfected a child support lien on Rodriguez's inmate trust account. Rodriguez moved to remove the lien, and the OAG moved to foreclose the trust account. Rodriguez requested a bench warrant, or in the alternative, an order allowing him to participate in the trial by teleconference or by video. The trial court denied the motion on July 22, 2011. However, in the order denying Rodriguez's motion, the trial court set out that it would allow Rodriguez to present evidence through deposition, affidavit, or other written discovery.

On September 8, 2011, after a hearing, the trial court signed an order foreclosing child support lien, stating that there was an arrearage of $42,734.50 and rendered judgment in that amount. The trial court ordered the surrender of all of Rodriguez's assets in his inmate trust account to the OAG.[1] This appeal ensued.

## II. REQUEST TO PARTICIPATE IN TRIAL COURT PROCEEDINGS

By his first issue, Rodriguez contends that the trial court abused its discretion by denying his request for a bench warrant and by denying his request to appear at trial via video or teleconference.

### A. Standard of Review and Applicable Law

We review a trial court's decision on an inmate's request for a bench warrant for an abuse of discretion. *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003). The test for

---

[1] In his brief, Rodriguez claims that the OAG requested the release of $1973.78 from his inmate trust account.

abuse of discretion is whether the trial court acted in an arbitrary or unreasonable manner or without reference to any guiding principles when it made the complained-of ruling. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

A litigant cannot be denied access to the courts merely because he or she is an inmate. *In re Z.L.T.*, 124 S.W.3d at 165. "However, an inmate does not have an absolute right to appear in person in every court proceeding." *Id.*; *In re D.D.J.*, 136 S.W.3d 305, 311 (Tex. App.—Fort Worth 2004, no pet.) (explaining that an inmate, whether plaintiff or defendant in a civil action, does not have an automatic right to appear personally in court); *Pedraza v. Crossroads Sec. Sys.*, 960 S.W.2d 339, 342 (Tex. App.—Corpus Christi 1997, no pet.) ("[P]risoners have no absolute right to appear personally at civil proceedings."); *see also Jackson v. Neal*, No. 13-07-00164-CV, 2009 Tex. App. LEXIS 370, at *14 (Tex. App.—Corpus Christi Jan. 22, 2009, no pet.) (mem. op.) (same). When determining whether to grant an inmate's request for a bench warrant, the trial court must balance the inmate's right of access to the courts against the government's interest in protecting the integrity of the correctional system. *In re Z.L.T.*, 124 S.W.3d at 165; *In re D.D.J.*, 136 S.W.3d at 311; *Heine v. Tex. Dep't of Pub. Safety*, 92 S.W.3d 642, 649 (Tex. App.—Austin 2002, pet. denied); *Jackson*, 2009 Tex. App. LEXIS 370, at *14.

In making its decision whether or not to grant the inmate's request for a bench warrant, the court considers the following factors: (1) the costs and inconvenience of transporting the prisoner to the courtroom; (2) the security risk the prisoner presents to the court and the public; (3) whether the prisoner's claims are substantial; (4) whether

3

the matter's resolution can reasonably be delayed until the prisoner's release; (5) whether the prisoner can and will offer admissible, noncumulative testimony that cannot be effectively presented by deposition, telephone, or some other means; (6) whether the prisoner's presence is important in judging his demeanor and credibility; (7) whether the trial is to the court or a jury; and (8) the prisoner's probability of success on the merits, (collectively the "*Z.L.T.* factors"). *In re Z.L.T.*, 124 S.W.3d at 165–66; *Heine*, 92 S.W.3d at 650 n.7. The inmate has the burden to show the trial court why his presence is required. *In re Z.L.T.*, 124 S.W.3d at 166; *In re A.W.*, 302 S.W.3d 925, 929 (Tex. App.—Dallas 2010, no pet.) ("[W]hen an inmate asks to be physically present for a proceeding, he must provide the trial court with sufficient factual information to allow the court to assess the necessity of his appearing at the relevant hearing."); *In re D.D.J.*, 136 S.W.3d at 312 ("[A]n inmate requesting a bench warrant bears the burden of identifying with sufficient specificity the grounds for establishing his or her right to relief."). The trial court does not "have a duty to go beyond the bench warrant request and independently inquire into the necessity of an inmate's appearance, regardless of the content of the request." *In re Z.L.T.*, 124 S.W.3d at 166.

"The right of a prisoner to have access to the courts entails not so much his personal presence as the opportunity to present evidence or contradict the evidence of the opposing party." *In re R.C.R.*, 230 S.W.3d 423, 426 (Tex. App.—Fort Worth 2007, no pet.) (quoting *In re D.D.J.*, 136 S.W.3d at 314). The courts have consistently held that if a trial court determines that a pro se inmate in a civil action has demonstrated a "substantial claim" but has not demonstrated that he is entitled to leave prison to appear in person, the court should nonetheless consider the inmate's request to proceed by

4

some other means, such as affidavit, deposition, or telephone. *See In re A.W.*, 302 S.W.3d at 930 (determining that the trial court abused its discretion by denying the inmate's request for bench warrant without allowing him to proceed by some other effective means); *In re D.D.J.*, 136 S.W.3d 305, 314 (Tex. App.—Fort Worth 2004, no pet.) (concluding that in denying motion for bench warrant, the trial court abused its discretion because it should have considered other effective means expressly requested by the inmate, such as telephone conference); *Heine*, 92 S.W.3d at 650 (providing that even if merits could have been determined without the inmate's physical presence, the trial court should have considered other effective means for him to present his side of dispute, for example, by arranging conference call); *see also In re R.C.R.*, 230 S.W.3d at 426–27 (explaining that if the trial court determines that the inmate is not entitled to appear personally, the trial court should allow the inmate to proceed by affidavit, deposition, telephone, or other means); *Sweed v. City of El Paso*, 139 S.W.3d 450, 452 (Tex. App.—El Paso 2004, no pet.) (concluding that the trial court abused its discretion by dismissing the inmate's case for want of prosecution after failing to consider the inmate's request to proceed by telephone or videoconferencing technology).

## B. Discussion

After denying Rodriguez's request to be present at the foreclosure hearing, the trial court ordered that as long as Rodriguez is incarcerated, he would be allowed to: (1) "present[] his testimony and documentary evidence by way of deposition and/or written discovery taken under the Texas Rules of Civil Procedure"; (2) "present[] his testimony and documentary evidence by way of Affidavit, duly sworn by [Rodriguez]";

5

and (3) subpoena witnesses to appear and testify on his behalf. The trial court did not file any findings of fact or conclusions of law. However, it implicitly found that Rodriguez had not met his burden of showing that his presence at the foreclosure hearing was warranted. *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.) (citing *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996)) (providing that in the absence of findings of fact or conclusions of law, we must presume that the trial court made all the findings necessary to support its judgment).

In order to prevail on a motion for a bench warrant, Rodriguez was required to set out factual information concerning the *Z.L.T.* factors to show why his interest in appearing at the hearing outweighed the impact on the correctional system.[2] *See In re Z.L.T.*, 124 S.W.3d at 166; *In re A.W.*, 302 S.W.3d at 929 (concluding that although the inmate made a strong showing for the need to participate, the trial court properly denied his motion for a bench warrant because the inmate did not "make a factual showing concerning issues of transportation and safety"). He did not do so. Moreover, the trial court had no duty to independently inquire into the necessity of Rodriguez's appearance. *See In re Z.L.T.*, 124 S.W.3d at 166. In his motion for a bench warrant and request to be present for trial by either teleconference or by video, Rodriguez did not address any of the *Z.L.T.* factors. *See id.* Rodriguez merely stated that the "suit

---

[2] On August 10, 2011, Rodriguez filed a second motion for a bench warrant and other relief after the trial court denied his first motion. Because Rodriguez filed his second motion after the trial court made its ruling denying the relief requested on July 22, 2011, we will not consider it. *See Methodist Hosps. of Dallas v. Tall*, 972 S.W.2d 894, 898 (Tex. App.—Corpus Christi 1998, no pet.) ("It is axiomatic that an appellate court reviews actions of a trial court based on the materials before the trial court at the time it acted."); *see also* TEX. R. APP. P. 33.1 (a)(2) (establishing that to present a complaint for appellate review, the record must reflect that the trial court either "(A) ruled on the request, objection, or motion, either expressly or implicitly; or (B) refused to rule . . . and the complaining party objected to the refusal"); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003) (limiting the appellate court's review of a trial court's ruling to the arguments, information, and evidence available to the trial court at the time it ruled).

cannot be fairly made without [his presence] to testify on his own behalf and to assist any appointed counsel in the presentation of evidence, cross-examination of witnesses, and defense of this suit." Because Rodriguez did not justify the need for his presence at the hearing, we cannot say that the trial court abused its discretion by denying his motion for a bench warrant. *See id.* (concluding that the trial court did not abuse its discretion in implicitly denying the inmate's request for a bench warrant because the inmate "failed to provide any factual information showing why his interest in appearing outweighed the impact on the correctional system").

Although the trial court also denied Rodriguez's request to attend the hearing via teleconference or by video, the trial court gave Rodriguez the opportunity to present evidence through affidavit and allowed Rodriguez the opportunity to subpoena witnesses to testify on his behalf. Rodriguez filed his own affidavit with the trial court. In addition, Rodriguez filed nine sworn affidavits from individuals stating that they provide monetary gifts to Rodriguez to help him with his living expenses. Rodriguez also filed statements from his inmate trust account showing that deposits were made by the nine individuals who had filed the sworn affidavits.

This is not a case in which the trial court summarily denied Rodriguez any access to the court. The record is sufficient to show that Rodriguez had the opportunity to and did participate in the foreclosure hearing. And, as stated above, Rodriguez failed to show that his presence at the foreclosure hearing was necessary. Therefore, the trial court did not abuse its discretion by denying Rodriguez's request to appear via teleconference or video. *See In re D.L.D.*, 374 S.W.3d 509, __ (Tex. App.—San Antonio 2012, no pet.) (concluding that the trial court did not abuse discretion by

7

denying inmate's request for a teleconference because appellant had the opportunity to be heard "by other means" and was allowed "to present evidence or contradict the evidence of the opposing party"). We overrule Rodriguez's first issue.

### III. DEFINITION OF NET RESOURCES

By his second and third issues, Rodriguez contends that the trial court improperly determined that the monetary gifts he received in his inmate trust account constituted net resources. Rodriguez first argues that the trial court improperly applied section 154.062 of the family code retroactively. Next, Rodriguez argues that the law in effect in 1995 when he was ordered to pay child support applies to his case and that the trial court misapplied the law "to define the difference between 'net resources' and 'gifts.'" Rodriguez's arguments have no merit because the trial court must determine a party's net resources pursuant to section 154.062 and its predecessor when setting and modifying the amount of child support the obligor must pay.[3]

---

[3] Section 154.062 states that "[t]he court shall calculate net resources for the purpose of determining child support liability as provided by this section." TEX. FAM. CODE ANN. § 154.062 (West Supp. 2011). Cases cited by Rodriguez involve former family code sections 14.052, 14.053 and 14.054 delineating how the amount of child support to be paid was calculated in certain situations. *Ikard v. Ikard*, 819 S.W.2d 644, 649 (Tex. App.—El Paso 1991, no writ) (finding that monetary gifts were not to be considered "resources" of the recipient for purposes of determining the amount of child support to be paid unless the donor had the legal obligation to give them); *Tucker v. Tucker*, 908 S.W.2d 530, 533 (Tex. App.—San Antonio, 1995, writ denied) (stating that when setting the amount of child support, the trial court must be guided by, among other things, "any financial resources available for the support of the child"). Section 14.053(b) stated that

"Net resources," for the purpose of determining child support liability, are 100 percent of all wage and salary income and other compensation for personal services . . . and all other income actually being received, including but not limited to severance pay, retirement benefits, pensions, trust income, annuities, capital gains, social security benefits, unemployment benefits, disability and workers' compensation benefits, interest income from notes but not including return of principal or capital, accounts receivable regardless of the source, gifts and prizes, spousal maintenance, and alimony, less (subtracting) 100 percent of social security taxes, federal income tax withholding for a single person claiming one personal exemption and the standard deduction, union dues, and expenses for health insurance coverage for the obligor's child. Benefits paid pursuant to aid for families with dependent children and any other child support received from any source shall be disregarded in calculating net resources.

8

The cases cited by Rodriguez concern whether gifts should be included in the determination of the party's net resources for purposes of calculating the amount of child support a party must pay in very specific situations, not present here. *See Ikard v. Ikard*, 819 S.W.2d 644, 649 (Tex. App.—El Paso 1991, no writ); *Tucker v. Tucker*, 908 S.W.2d 530, 533 (Tex. App.—San Antonio, 1995, writ denied).

As set out above, the statutes and cases cited by Rodriguez do not apply to the collection of child support that is past due. Instead, section 157.317, which applies when an obligor has failed to pay the ordered child support, states that the lien attaches to all personal property, including bank accounts. TEX. FAM. CODE ANN. § 157.317 (West Supp. 2011) ("A child support lien attaches to all real and personal property not exempt under the Texas Constitution or other law."). Section 157.317 does not require a calculation of net resources, and it does not exempt monetary gifts from liens. *Compare id. with* § 154.062 ("The court shall calculate net resources for the purpose of determining child support liability as provided by this section."). Section 157.323, entitled "Foreclosure or Suit to Determine Arrearages," states that if arrearages are owed by the obligor, the trial court shall "order an individual or organization in possession of nonexempt personal property or cash owned by the obligor to dispose of the property as the court may direct." *See id.* § 157.323. This section authorizing

TEX. FAM. CODE ANN. § 14.053(b) (Vernon Supp. 1994) (repealed 1995) (current version at TEX. FAM. CODE ANN. § 154.062).

In *Ikard*, the court explained that because section 14.053 stated that "any other child support received from any source shall be disregarded in calculating net resources," monetary gifts to the obligee were not resources within the statutory meaning. *Ikard*, 819 S.W.2d at 535. In *Tucker*, the court was construing section 14.054, which applied when an obligor's income exceeded $4,000. Neither case concerned whether a lien could be placed on an account, which included monetary gifts, when a party failed to make child support payments. Moreover, contrary to Rodriguez's assertion, section 14.053(b) specifically stated that net resources included gifts.

9

foreclosure of a obligor's bank account neither requires the determination of net resources nor exempts property acquired by gift.[4]

We conclude that the trial court did not abuse its discretion by ordering foreclosure of Rodriguez's inmate trust account. We overrule Rodriguez's second and third issues.

## IV. Conclusion

We affirm the trial court's judgment.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
29th day of November, 2012.

---

[4] Rodriguez cites no law, and we find none, exempting monetary gifts from a child support lien or foreclosure.

10