COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                          NO.  02-07-394-CV

 

 

IN THE INTEREST OF C.M.R,
D.C.R.,

A.N.R., AND D.R.R., II,
CHILDREN

 

                                                  ------------

 

              FROM THE
415TH DISTRICT COURT OF PARKER COUNTY

 

                                                  ------------

 

                                  MEMORANDUM OPINION[1]

 

                                                  ------------

I. 
Introduction

Danny R., pro se, appeals from the trial court=s order
terminating his parental rights in his children, C.M.R., D.C.R., A.N.R., and
D.R.R., II.  We affirm.

                                II.  Factual and Procedural History








Danny is an inmate in the Missouri prison
system.  In October 2006, Victoria, the
children=s
mother, filed a petition to terminate Danny=s
parental rights, alleging as grounds that Danny had been convicted or placed on
community supervision for causing the death of or serious bodily injury to a
child and had knowingly engaged in criminal conduct that had resulted in his
conviction of an offense and confinement or imprisonment and inability to care
for the children for not less than two years from the date of the petition=s
filing. 

In November 2006, Danny filed a motion for
appointment of counsel and an answer, admitting that he had pleaded guilty to
causing a person=s death but denying that the
person was a child and stating that he had not abandoned his children.  Danny did not generally deny the allegations
in Victoria=s petition, and he did not
specifically deny that he had knowingly engaged in criminal conduct that
resulted in his imprisonment for at least two years into the future.  He also filed a petition for habeas corpus ad
testificandum.

The trial court set the case for trial on
February 20, 2007.  Danny filed another
motion for appointment of counsel, another petition for writ of habeas corpus
ad testificandum, asserting that his testimony at trial was necessary, and a
motion to be allowed to participate in the trial telephonically.

The trial court did not reach the case on
February 20, so it reset the trial for October 15.  Victoria=s
counsel sent Danny a letter stating that the trial court Ahas
given you the opportunity to be heard and present your evidence by affidavit.@








Danny filed an amended answer on October 9,
stating that he Abeliev[ed] that no such grounds
exist for termination.@ 
He admitted that he was incarcerated for rape but asserted that it was
only a second-degree felony and that his conviction and imprisonment did not
necessarily support termination. Danny attached several exhibits to his amended
answer, including Victoria=s
response to his request for disclosure, in which she stated that one basis for
termination she would attempt to prove at trial was his conviction for sexually
assaulting a minor under the age of fourteen years.  He also attached his own affidavit,  reminiscing about his experiences and feelings
as a father and touting his parental abilities and jailhouse efforts at self-improvement,
such as attending Narcotics Anonymous meetings and working toward his
G.E.D.  








The trial court heard the case on October
15.  Victoria was the only witness.  She testified that Danny was the presumed
father of the children, that he was serving time in Missouri on a conviction of
sexually assaulting a child, that he had also been convicted for causing the
death of a different child while he was driving while intoxicated, that he had
never supported the children, that he had a drug problem, that he was violent
towards her and the children, that termination was in the children=s best
interest, and that she was in a relationship with a man who wanted to adopt the
children.  After Victoria rested, the
trial court said to her counsel, AHe
[Danny] filed some pleadings and so forth. 
You saw those, right?@  Counsel answered, AYes . . . .  I would just note that he didn=t deny
any of the allegations nor did he claim any support in those affidavits.@

The trial court terminated Danny=s
parental rights, finding as grounds that Danny had 

a.      been
convicted or placed on community supervision . . . for being criminally
responsible for the death or serious injury of a child under section 21.11 of
the Texas Penal Code [indecency with a child] and

 

b.      knowingly
engaged in criminal conduct that has resulted in his conviction of an offense
and confinement or imprisonment and inability to care for the children for not
less than two years from the date the petition was filed

 

and that termination was in the children=s best
interest.  Danny filed this appeal.

                                             III.  Due Process

In his first issue, Danny argues that the trial
court denied him due process by failing to grant his requests for appointment
of counsel, for a writ of habeas corpus ad testificandum, and to participate in
the trial telephonically, thereby depriving him of a meaningful opportunity to
be heard.








All litigants who are forced to settle disputes
through the judicial process have a fundamental right under the federal
constitution to be heard at a meaningful time in a meaningful manner.  In re D.D.J., 136 S.W.3d 305, 313B14 (Tex.
App.CFort
Worth 2004, no pet.).  A prisoner=s right
to have access to the courts entails not so much his personal presence as the
opportunity to present evidence or to contradict the evidence of the opposing
party.  Id.  Should the court find that the pro se inmate
in a civil action is not entitled to leave prison to appear personally in
court, then it should allow the prisoner to proceed by affidavit, deposition,
telephone, or other effective means.  Id.

A.  Appointment of Counsel








No statutory right to appointed counsel exists in
a private termination suit.  In re
J.C., 250 S.W.3d 486, 489 (Tex. App.CFort
Worth 2008, pet. filed).  The legislature
has mandated the appointment of counsel for indigent parents in a termination
suit only Ain a suit filed by a
governmental entity in which termination of the parent‑child relationship
is sought.@ 
Compare Tex. Fam. Code Ann. ''
107.001(1), .015(a), (b), .021 (Vernon 2005) (appearing to permit, in a private
termination suit, permissive appointment of an attorney ad litem for a parent
and payment of such attorney ad litem Aby one
or more of the parties@) with '
107.013(a)(1) (mandating appointment of attorney ad litem for an indigent
parent in a termination suit filed by a governmental entity); see also
Tex. Gov=t Code
Ann. ' 24.016
(Vernon 2004) (stating that A[a]
district judge may appoint counsel to attend the cause of a party who
makes an affidavit that he is too poor to employ counsel to attend to the cause@)
(emphasis added); Gibson v. Tolbert, 102 S.W.3d 710, 712B13 (Tex.
2003) (recognizing courts= inherent power to appoint
counsel in civil cases under exceptional circumstances).  Nor does due process require the appointment
of counsel in every termination case, even when the State initiates the
termination proceeding.  Lassiter v.
Dep=t of Social Servs., 452
U.S. 18, 31B32, 101 S. Ct. 2153, 2161B62
(1981).  Because the appointment of
counsel in a private termination is within the trial court=s sound
discretion, we overrule this part of Danny=s first
issue.  See id., 101 S. Ct. at
2161B62; In
re J.C., 250 S.W.3d at 489.

B.  Habeas Corpus ad
Testificandum

The writ of habeas corpus ad testificandum is
also known as a bench warrant.  In re
Z.L.T., 124 S.W.3d 163, 164 (Tex. 2003). 
We review a trial court=s ruling
on a bench warrant request for an abuse of discretion.  See id. at 165.  A litigant cannot be denied access to the
courts simply because he is an inmate.  Id. 
However, our laws do not guarantee an inmate the absolute right to
personally appear in every court proceeding. 
Id.  AInstead,
the inmate=s right of access to the courts
must be weighed against the protection of our correctional system=s
integrity.@ 
Id.








Texas courts consider several factors when
deciding whether to grant a prisoner=s
request for a bench warrant, including (1) the expense and inconvenience of
transporting the inmate to court; (2) whether the inmate presents a security
risk to the court and public; (3) whether the inmate has substantial claims;
(4) whether the proceeding can reasonably be delayed until the inmate=s release;
(5) whether the inmate Acan and will offer admissible,
noncumulative testimony that cannot be effectively presented by deposition,
telephone, or some other means@; (6)
whether the inmate=s Apresence
is important in judging his demeanor and credibility@; (7)
whether the case will be tried before a jury or to the court; and (8) the
inmate=s
probability of success on the merits.  Id.
at 165B66
(explaining that in recognizing these factors, Texas courts have followed Stone
v. Morris, 546 F.2d 730, 735B36 (7th
Cir. 1976)).

AIn general, our rules place the
burden on litigants to identify with sufficient specificity the grounds for a
ruling they seek.  A litigant=s status
as an inmate does not alter that burden.@  Z.L.T., 124 S.W.3d at 166 (citations
omitted).  An inmate who claims a
constitutional right to access must explain Awhy his
appearance in court [is] necessary to preserve his constitutional right[.]@  Id. 
The trial court does not have a duty to independently inquire into Arelevant
facts not provided by the moving party.@  Id. 
Rather, the inmate who seeks a bench warrant Amust
justify the need for his presence.@  Id.








In Z.L.T., the supreme court noted that
the inmate=s request for a bench warrant
provided no information that would allow the trial court to assess the
necessity for his appearance.  Id.  While the Z.L.T. inmate=s
request listed the Stone factors, the request Afailed
to provide any factual information showing why his interest in appearing
outweighed the impact on the correctional system.@  Id. 
The court also noted that the only pertinent information in the inmate=s
request was that he was incarcerated in a facility more than 200 miles from the
trial court.  Id.  The court held that the inmate failed to meet
his burden to establish his right to relief and that the trial court did not
abuse its discretion by overruling the bench warrant request.  Id.








In this case, Danny did not list the Stone
factors or recite facts relevant to those factors.  His first request stated only that he was
incarcerated in Missouri, that he could not afford an attorney, and that he
would be substantially and irreparably prejudiced by his inability to attend
trial.  His second request made
essentially the same assertions and noted the serious nature of the termination
proceeding.  He offered no facts showing
that his interest in appearing outweighed the impact and burden on the correctional
system.  See Z.L.T., 124 S.W.3d at
166.  Nor did Danny explain why his
appearance by alternative measures, such as by telephone, deposition, or
affidavit, would not be sufficient under the circumstances of this case.  See id. at 165B66
(noting that one of the Stone factors is whether the testimony cannot
effectively be presented by deposition, telephone, or other means).

Because Danny=s bench
warrant requests did not recite facts supporting the Stone factors, we
hold that the trial court did not abuse its discretion by denying his request.

C.  Telephonic Appearance

When a trial court denies a request for a bench
warrant and does not allow an inmate to appear in person, it should afford the
inmate the opportunity to proceed by affidavit, deposition, telephone, or other
means.  D.D.J., 136 S.W.3d at 314;
Boulden v. Boulden, 133 S.W.3d 884, 886B87 (Tex.
App.CDallas
2004, no pet.); see also Z.L.T., 124 S.W.3d at 165B66.  Again, we review the trial court=s ruling
on an appellant=s request to participate at
trial by alternate means for an abuse of discretion.  See Boulden, 133 S.W.3d at 886.








Here, the trial court afforded Danny the
opportunity to appear by affidavit, and he took advantage of that opportunity
by filing affidavits.  Danny argues that
had he appeared telephonically, he could have objected to Victoria=s
counsel=s
leading questions and cross-examined Victoria about the details of his
conviction for causing another individual=s death,
and particularly the victim=s
age.  While some of the questions counsel
asked Victoria were leading, we cannot see how Danny=s
telephonic objection to the questions would have changed the proceeding=s
outcome, even if the trial court had sustained his objections.  As for cross-examining Victoria about the age
of the person whose death Danny admits he caused, he contested Victoria=s
assertion that the person was a child in several of his verified trial court
pleadings, and he could have done so in his trial affidavit as well.  Under the circumstances presented here, we
hold that Danny has failed to show that the trial court abused its discretion by
allowing him to appear by affidavit rather than telephonically.

To sum up, due process does not require
appointment of counsel.  See Lassiter,
452 U.S. at 31B32, 101 S. Ct. at 2162.  But it does require a trial court to give an
incarcerated litigant some opportunity to be heard, be it in person,
telephonically, or by affidavit.  D.D.J.,
136 S.W.3d at 314; Boulden, 133 S.W.3d at 886.  In this case, the trial court did not abuse
its discretion by refusing to appoint counsel or by denying Danny=s
requests to appear in person and telephonically, and the trial court fulfilled
Danny=s due
process rights by allowing him to appear by affidavit.  We therefore overrule Danny=s first
issue.

                                  IV.  Sufficiency of the Evidence








In his second issue, Danny argues that A[t]he
[trial] court erred in its findings favoring [Victoria], as [she] failed to
meet the burden of proof necessary for termination.@  Because Danny=s issue
implicates the burden of proof, rather than arguing the absence of any
evidence, we construe his issue as a challenge to the factual sufficiency of
the evidence.  See Tex. R. App. P.
38.9.

A.  Standard of Review

In proceedings to terminate the parent‑child
relationship brought under section 161.001 of the family code, the petitioner
must establish at least one ground listed under subdivision (1) of the statute
and must also prove that termination is in the best interest of the child.  Tex. Fam. Code Ann. ' 161.001
(Vernon Supp. 2008); In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex.
Dep=t of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987).








The petitioner must justify termination by clear
and convincing evidence.  Tex. Fam. Code
Ann. '' 161.001,
161.206(a); In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002).  This intermediate standard falls between the
preponderance standard of ordinary civil proceedings and the reasonable doubt
standard of criminal proceedings.  In
re G.M., 596 S.W.2d 846, 847 (Tex. 1980); In re C.S., 208 S.W.3d 77,
83 (Tex. App.CFort Worth 2006, pet.
denied).  It is defined as the Ameasure
or degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be
established.@ 
Tex. Fam. Code Ann. ' 101.007
(Vernon 2002).

When reviewing the evidence for factual
sufficiency, we must give due deference to the fact-finder=s
findings and not supplant the verdict with our own.  In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).  We must determine whether,
on the entire record, a fact-finder could reasonably form a firm conviction or
belief that the parent violated the relevant conduct provision of section
161.001(1) and that the termination of the parent=s parental
rights would be in the best interest of the child.  In re C.H., 89 S.W.3d 17, 28 (Tex.
2002).  If, in light of the entire
record, the disputed evidence that a reasonable fact-finder could not have
credited in favor of the finding is so significant that a fact-finder could not
reasonably have formed a firm belief or conviction in the truth of its finding,
then the evidence is factually insufficient. 
H.R.M., 209 S.W.3d at 108. 
We may affirm termination only on a ground that was both pleaded by the
party seeking termination and found by the trier of fact.  In re J.R.S., 232 S.W.3d 278, 285
(Tex. App.CFort Worth 2007, no pet.);
Vasquez v. Tex. Dep=t of
Protective & Regulatory Servs., 190 S.W.3d 189, 194 (Tex. App.CHouston
[1st Dist.] 2005, pet. denied).

 

 








B.  Unassigned Error








Danny did not challenge the trial court=s
findings under section 161.001(1) of the family code, nor does he now appeal
the termination of his parental rights with regard to those findings.[2]  See Tex. Fam. Code Ann. ' 161.001(1).  An appellate court cannot reverse on Aunassigned
error,@ i.e., a
ground not presented in the appellate briefs. 
Pat Baker Co. v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998).  Because Danny does not appeal on the basis of
the trial court=s findings under section
161.001(1), we may not address the factual sufficiency of the evidence to
support those findings.  See id.; see
also In re B.L.D., 113 S.W.3d 340, 350B51 (Tex.
2003) (declining to extend fundamental error doctrine to termination cases for
review of unassigned error).

C.  Best Interest Finding

Danny complains only that the trial court did not
consider Aall the weight of the evidence@ as to
the best interest finding under section 161.001(2).  See Tex. Fam. Code Ann. ' 161.001(2).  He argues,

So, when it comes to
proving what=s in the best interest of
the children, and all one has to go on is a she said/he said scenario, the
question begs to be asked, did she meet that burden of proof when, all things
considered, either parent=s answers could rightly
be seen as self-serving, as each would see their position as being in the Abest interest@?

 

He claims that, with regard to the best interest finding, Victoria did
not meet the clear and convincing standard of proof necessary to terminate his
parental rights.








Prompt and permanent placement of the child in a
safe environment is presumed to be in the child=s best
interest.  Tex. Fam. Code Ann. '
263.307(a) (Vernon 2002).  There is also
a strong presumption that keeping a child with a parent is in the child=s best
interest.  In re R.R., 209 S.W.3d
112, 116 (Tex. 2006).  Nonexclusive
factors that the trier of fact in a termination case may use in determining the
best interest of the child include: (1) the desires of the child; (2) the
emotional and physical needs of the child now and in the future; (3) the
emotional and physical danger to the child now and in the future; (4) the
parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent which may indicate that the existing parent‑child
relationship is not a proper one; and (9) any excuse for the acts or omissions
of the parent.  Holley v. Adams,
544 S.W.2d 367, 371B72 (Tex. 1976).  These factors are not exhaustive; some listed
factors may be inapplicable to some cases; other factors not on the list may
also be considered when appropriate.  C.H.,
89 S.W.3d at 27.  Furthermore, undisputed
evidence of just one factor may be sufficient in a particular case to support a
finding that termination is in the best interest of the child.  Id. 
On the other hand, the presence of scant evidence relevant to each
factor will not support such a finding.  Id.








Victoria testified that Danny was in jail in
Missouri for a felony conviction and that he had been convicted for sexual
contact with a child and rape of a child. 
She testified that he had also been convicted for being criminally
responsible for the death or serious bodily injury of a twelve-year-old child
four or five years before, although that was not the crime for which he was
presently incarcerated.  She also
testified that he had never provided support to her and the children, that he
had a drug problem, that he had been violent toward her and the children, and
that she felt that it was in the children=s best
interest that his parental rights be terminated.  Victoria added that she had been in her
current relationship with another man for three years, that she hoped he would
adopt her children, and that he (the other man) wanted this as well.  The trial court granted to Victoria her
requested relief.

In her response to Danny=s
request for disclosure under rule 194.2(c), Victoria stated:

Respondent has been convicted of Rape-1st
Degree-Sexual Intercourse with a person less than fourteen years old and upon
release from prison the Respondent will have to register as a sex-offender, and
Respondent has been convicted of selling alcohol to a minor.  Respondent has never had a job nor has ever
support[ed] the children.  Respondent has
abused alcohol and drugs. 

Tex. R. Civ. P. 194.2(c) (stating that a party may request disclosure
of Athe
legal theories and, in general, the factual bases of the responding party=s claims
or defenses@).








Danny admitted that he had been incarcerated for
second-degree rape but not first degree rape as Victoria stated in her
discovery response.  And he stated that
his alleged conviction for Aselling
alcohol to a minor@ was actually for his own
underage drinking.  Danny admitted that
he was convicted of vehicular manslaughter, but he claimed that his passenger,
who died, was approximately twenty or twenty-one years old, Amaking
her, presumably, not a child in the eyes of the law.@

Danny attached a brief work history showing that
he had been employed with one company from 1999B2000;
worked for Dairy Queen for two months in 2000; performed freelance construction
and carpeting from 2000B2001; and went on social
security disability because of injury in a serious car wreck from 2001B2004.  He suggested that the allegations of physical
and verbal abuse fell under Anormal
and >societally
acceptable= forms of disciplinary action@ because
Victoria did not present any police reports, ADepartment
of Family Services@ reports, or medical records to
back up the claims.

Danny complained that Victoria had cut off his
contact with his children while he was incarcerated.  He stated that if the court ordered him to
take any parenting classes or supervised visits, he would Agladly@ do
that.  Danny averred that he loved his
children, that he had Ataken complete responsibility
for [his] actions and [had] great remorse,@ and
that his parental rights should not be terminated.  He stated that, while incarcerated, he had
taken anger management and G.E.D. classes, participated in job corps, placed
himself on the waiting list for Narcotics Anonymous, and continuously sent
Christmas presents and birthday cards to his children.








Based on this record, the trial court could have
reasonably formed a firm conviction or belief that termination of Danny=s
parental rights would be in the children=s best
interest.  See C.H., 89 S.W.3d at
28.  Notwithstanding Victoria=s
testimony, Danny=s own admissions about his
criminal history contradict his argument that termination of his parental
rights would not be in the children=s best
interests.  And if the trial court chose
to believe Victoria=s testimony, it could reasonably
have found that Danny never financially supported the children, that he was
violent, that he had a drug problem, and that, contrary to Danny=s
assertions, he was unlikely to change. 
Therefore, we overrule Danny=s second
issue. 

                                     V.  Conclusion

Having overruled Danny=s two
issues, we affirm the trial court=s order
terminating Danny=s parental rights in C.M.R.,
D.C.R., A.N.R., and D.R.R., II.

 

PER
CURIAM

 

PANEL:  MCCOY, J.; CAYCE, C.J.; and GARDNER, J.

 

GARDNER, J. concurs
without opinion.

 

DELIVERED: November 20,
2008











[1]See Tex. R. App. P. 47.4.





[2]In his appellate brief,
Danny states, AClearly, given Appellant=s incarceration, he
wouldn=t and didn=t deny having committed a
felony.  In and of itself, this could
satisfy the first prong for termination.@  In his
closing, he adds, 

 

It was Appellant=s admission of
incarceration which can lead a reasonable trier of facts to substantiate the
first prong necessary for setting up a possible termination of his parental
rights.  However, it was the second prong
[the best interest finding on which] she [Victoria] struggled to live up to the
burden of proof.

 

Furthermore,
Danny admitted in his pleadings that he had been incarcerated for rape, and he
admitted that his anticipated release date was eighteen months from October 9,
2007, or around April 1, 2009.  Victoria
filed the original petition to terminate his parental rights on October 19,
2005.  See Tex. Fam. Code Ann. ' 161.001(1)(Q)
(stating that a ground for termination of parental rights is that the parent
knowingly engaged in criminal conduct that resulted in his conviction of an
offense and confinement and inability to care for the children for not less than
two years from the date of filing the petition).  The trial court found that subsection (Q) was
proven by clear and convincing evidence.