

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-07-394-CV

IN THE INTEREST OF C.M.R, D.C.R.,
A.N.R., AND D.R.R., II, CHILDREN

------------

FROM THE 415TH DISTRICT COURT OF PARKER COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  Introduction

Danny R., pro se, appeals from the trial court's order terminating his parental rights in his children, C.M.R., D.C.R., A.N.R., and D.R.R., II.  We affirm.

### II.  Factual and Procedural History

Danny is an inmate in the Missouri prison system.  In October 2006, Victoria, the children's mother, filed a petition to terminate Danny's parental

---

[1] *See* Tex. R. App. P. 47.4.

rights, alleging as grounds that Danny had been convicted or placed on community supervision for causing the death of or serious bodily injury to a child and had knowingly engaged in criminal conduct that had resulted in his conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of the petition's filing.

In November 2006, Danny filed a motion for appointment of counsel and an answer, admitting that he had pleaded guilty to causing a person's death but denying that the person was a child and stating that he had not abandoned his children. Danny did not generally deny the allegations in Victoria's petition, and he did not specifically deny that he had knowingly engaged in criminal conduct that resulted in his imprisonment for at least two years into the future. He also filed a petition for habeas corpus ad testificandum.

The trial court set the case for trial on February 20, 2007. Danny filed another motion for appointment of counsel, another petition for writ of habeas corpus ad testificandum, asserting that his testimony at trial was necessary, and a motion to be allowed to participate in the trial telephonically.

The trial court did not reach the case on February 20, so it reset the trial for October 15. Victoria's counsel sent Danny a letter stating that the trial court "has given you the opportunity to be heard and present your evidence by affidavit."

2

Danny filed an amended answer on October 9, stating that he "believ[ed] that no such grounds exist for termination." He admitted that he was incarcerated for rape but asserted that it was only a second-degree felony and that his conviction and imprisonment did not necessarily support termination. Danny attached several exhibits to his amended answer, including Victoria's response to his request for disclosure, in which she stated that one basis for termination she would attempt to prove at trial was his conviction for sexually assaulting a minor under the age of fourteen years. He also attached his own affidavit, reminiscing about his experiences and feelings as a father and touting his parental abilities and jailhouse efforts at self-improvement, such as attending Narcotics Anonymous meetings and working toward his G.E.D.

The trial court heard the case on October 15. Victoria was the only witness. She testified that Danny was the presumed father of the children, that he was serving time in Missouri on a conviction of sexually assaulting a child, that he had also been convicted for causing the death of a different child while he was driving while intoxicated, that he had never supported the children, that he had a drug problem, that he was violent towards her and the children, that termination was in the children's best interest, and that she was in a relationship with a man who wanted to adopt the children. After Victoria rested, the trial court said to her counsel, "He [Danny] filed some pleadings and

3

so forth. You saw those, right?" Counsel answered, "Yes . . . . I would just note that he didn't deny any of the allegations nor did he claim any support in those affidavits."

The trial court terminated Danny's parental rights, finding as grounds that Danny had

   a.  been convicted or placed on community supervision . . . for being criminally responsible for the death or serious injury of a child under section 21.11 of the Texas Penal Code [indecency with a child] and

   b.  knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date the petition was filed

and that termination was in the children's best interest. Danny filed this appeal.

### III. Due Process

In his first issue, Danny argues that the trial court denied him due process by failing to grant his requests for appointment of counsel, for a writ of habeas corpus ad testificandum, and to participate in the trial telephonically, thereby depriving him of a meaningful opportunity to be heard.

All litigants who are forced to settle disputes through the judicial process have a fundamental right under the federal constitution to be heard at a meaningful time in a meaningful manner. *In re D.D.J.*, 136 S.W.3d 305, 313–14 (Tex. App.—Fort Worth 2004, no pet.). A prisoner's right to have

4

access to the courts entails not so much his personal presence as the opportunity to present evidence or to contradict the evidence of the opposing party. *Id.* Should the court find that the pro se inmate in a civil action is not entitled to leave prison to appear personally in court, then it should allow the prisoner to proceed by affidavit, deposition, telephone, or other effective means. *Id.*

## A. Appointment of Counsel

No statutory right to appointed counsel exists in a private termination suit. *In re J.C.*, 250 S.W.3d 486, 489 (Tex. App.—Fort Worth 2008, pet. filed). The legislature has mandated the appointment of counsel for indigent parents in a termination suit only "in a suit filed by a governmental entity in which termination of the parent-child relationship is sought." *Compare* Tex. Fam. Code Ann. §§ 107.001(1), .015(a), (b), .021 (Vernon 2005) (appearing to permit, in a private termination suit, permissive appointment of an attorney ad litem for a parent and payment of such attorney ad litem "by one or more of the parties") *with* § 107.013(a)(1) (mandating appointment of attorney ad litem for an indigent parent in a termination suit filed by a governmental entity); *see also* Tex. Gov't Code Ann. § 24.016 (Vernon 2004) (stating that "[a] district judge *may* appoint counsel to attend the cause of a party who makes an affidavit that he is too poor to employ counsel to attend to the cause")

(emphasis added); *Gibson v. Tolbert*, 102 S.W.3d 710, 712–13 (Tex. 2003) (recognizing courts' inherent power to appoint counsel in civil cases under exceptional circumstances). Nor does due process require the appointment of counsel in every termination case, even when the State initiates the termination proceeding. *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 31–32, 101 S. Ct. 2153, 2161–62 (1981). Because the appointment of counsel in a private termination is within the trial court's sound discretion, we overrule this part of Danny's first issue. *See id.*, 101 S. Ct. at 2161–62; *In re J.C.*, 250 S.W.3d at 489.

## B. Habeas Corpus ad Testificandum

The writ of habeas corpus ad testificandum is also known as a bench warrant. *In re Z.L.T.*, 124 S.W.3d 163, 164 (Tex. 2003). We review a trial court's ruling on a bench warrant request for an abuse of discretion. *See id.* at 165. A litigant cannot be denied access to the courts simply because he is an inmate. *Id*. However, our laws do not guarantee an inmate the absolute right to personally appear in every court proceeding. *Id*. "Instead, the inmate's right of access to the courts must be weighed against the protection of our correctional system's integrity." *Id*.

Texas courts consider several factors when deciding whether to grant a prisoner's request for a bench warrant, including (1) the expense and

6

inconvenience of transporting the inmate to court; (2) whether the inmate presents a security risk to the court and public; (3) whether the inmate has substantial claims; (4) whether the proceeding can reasonably be delayed until the inmate's release; (5) whether the inmate "can and will offer admissible, noncumulative testimony that cannot be effectively presented by deposition, telephone, or some other means"; (6) whether the inmate's "presence is important in judging his demeanor and credibility"; (7) whether the case will be tried before a jury or to the court; and (8) the inmate's probability of success on the merits. *Id*. at 165–66 (explaining that in recognizing these factors, Texas courts have followed *Stone v. Morris*, 546 F.2d 730, 735–36 (7th Cir. 1976)).

"In general, our rules place the burden on litigants to identify with sufficient specificity the grounds for a ruling they seek. A litigant's status as an inmate does not alter that burden." *Z.L.T.,* 124 S.W.3d at 166 (citations omitted). An inmate who claims a constitutional right to access must explain "why his appearance in court [is] necessary to preserve his constitutional right[.]" *Id*. The trial court does not have a duty to independently inquire into "relevant facts not provided by the moving party." *Id*. Rather, the inmate who seeks a bench warrant "must justify the need for his presence." *Id*.

7

In *Z.L.T.*, the supreme court noted that the inmate's request for a bench warrant provided no information that would allow the trial court to assess the necessity for his appearance. *Id*. While the *Z.L.T.* inmate's request listed the *Stone* factors, the request "failed to provide any factual information showing why his interest in appearing outweighed the impact on the correctional system." *Id*. The court also noted that the only pertinent information in the inmate's request was that he was incarcerated in a facility more than 200 miles from the trial court. *Id*. The court held that the inmate failed to meet his burden to establish his right to relief and that the trial court did not abuse its discretion by overruling the bench warrant request. *Id*.

In this case, Danny did not list the *Stone* factors or recite facts relevant to those factors. His first request stated only that he was incarcerated in Missouri, that he could not afford an attorney, and that he would be substantially and irreparably prejudiced by his inability to attend trial. His second request made essentially the same assertions and noted the serious nature of the termination proceeding. He offered no facts showing that his interest in appearing outweighed the impact and burden on the correctional system. *See Z.L.T.*, 124 S.W.3d at 166. Nor did Danny explain why his appearance by alternative measures, such as by telephone, deposition, or affidavit, would not be sufficient under the circumstances of this case. *See id.*

8

at 165–66 (noting that one of the *Stone* factors is whether the testimony cannot effectively be presented by deposition, telephone, or other means).

Because Danny's bench warrant requests did not recite facts supporting the *Stone* factors, we hold that the trial court did not abuse its discretion by denying his request.

## C. Telephonic Appearance

When a trial court denies a request for a bench warrant and does not allow an inmate to appear in person, it should afford the inmate the opportunity to proceed by affidavit, deposition, telephone, or other means. *D.D.J.*, 136 S.W.3d at 314; *Boulden v. Boulden*, 133 S.W.3d 884, 886–87 (Tex. App.—Dallas 2004, no pet.); *see also Z.L.T.*, 124 S.W.3d at 165–66. Again, we review the trial court's ruling on an appellant's request to participate at trial by alternate means for an abuse of discretion. *See Boulden*, 133 S.W.3d at 886.

Here, the trial court afforded Danny the opportunity to appear by affidavit, and he took advantage of that opportunity by filing affidavits. Danny argues that had he appeared telephonically, he could have objected to Victoria's counsel's leading questions and cross-examined Victoria about the details of his conviction for causing another individual's death, and particularly the victim's age. While some of the questions counsel asked Victoria were leading, we

cannot see how Danny's telephonic objection to the questions would have changed the proceeding's outcome, even if the trial court had sustained his objections. As for cross-examining Victoria about the age of the person whose death Danny admits he caused, he contested Victoria's assertion that the person was a child in several of his verified trial court pleadings, and he could have done so in his trial affidavit as well. Under the circumstances presented here, we hold that Danny has failed to show that the trial court abused its discretion by allowing him to appear by affidavit rather than telephonically.

To sum up, due process does not require appointment of counsel. *See Lassiter*, 452 U.S. at 31–32, 101 S. Ct. at 2162. But it does require a trial court to give an incarcerated litigant some opportunity to be heard, be it in person, telephonically, or by affidavit. *D.D.J.*, 136 S.W.3d at 314; *Boulden*, 133 S.W.3d at 886. In this case, the trial court did not abuse its discretion by refusing to appoint counsel or by denying Danny's requests to appear in person and telephonically, and the trial court fulfilled Danny's due process rights by allowing him to appear by affidavit. We therefore overrule Danny's first issue.

### IV. Sufficiency of the Evidence

In his second issue, Danny argues that "[t]he [trial] court erred in its findings favoring [Victoria], as [she] failed to meet the burden of proof necessary for termination." Because Danny's issue implicates the burden of

10

proof, rather than arguing the absence of any evidence, we construe his issue as a challenge to the factual sufficiency of the evidence. *See* Tex. R. App. P. 38.9.

**A. Standard of Review**

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish at least one ground listed under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2008); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

The petitioner must justify termination by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006, pet. denied). It is defined as the "measure or degree of proof that will produce in the mind of the

11

trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (Vernon 2002).

When reviewing the evidence for factual sufficiency, we must give due deference to the fact-finder's findings and not supplant the verdict with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provision of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108. We may affirm termination only on a ground that was both pleaded by the party seeking termination and found by the trier of fact. *In re J.R.S.*, 232 S.W.3d 278, 285 (Tex. App.—Fort Worth 2007, no pet.); *Vasquez v. Tex. Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 194 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

12

## B. Unassigned Error

Danny did not challenge the trial court's findings under section 161.001(1) of the family code, nor does he now appeal the termination of his parental rights with regard to those findings.[2]  *See* Tex. Fam. Code Ann. § 161.001(1).  An appellate court cannot reverse on "unassigned error," i.e., a ground not presented in the appellate briefs.  *Pat Baker Co. v. Wilson,* 971 S.W.2d 447, 450 (Tex. 1998).  Because Danny does not appeal on the basis of the trial court's findings under section 161.001(1), we may not address the

---

[2] In his appellate brief, Danny states, "Clearly, given Appellant's incarceration, he wouldn't and didn't deny having committed a felony.  In and of itself, this could satisfy the first prong for termination."  In his closing, he adds,

> It was Appellant's admission of incarceration which can lead a reasonable trier of facts to substantiate the first prong necessary for setting up a possible termination of his parental rights. However, it was the second prong [the best interest finding on which] she [Victoria] struggled to live up to the burden of proof.

Furthermore, Danny admitted in his pleadings that he had been incarcerated for rape, and he admitted that his anticipated release date was eighteen months from October 9, 2007, or around April 1, 2009. Victoria filed the original petition to terminate his parental rights on October 19, 2005. *See* Tex. Fam. Code Ann. § 161.001(1)(Q) (stating that a ground for termination of parental rights is that the parent knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement and inability to care for the children for not less than two years from the date of filing the petition). The trial court found that subsection (Q) was proven by clear and convincing evidence.

13

factual sufficiency of the evidence to support those findings. *See id.; see also In re B.L.D.*, 113 S.W.3d 340, 350–51 (Tex. 2003) (declining to extend fundamental error doctrine to termination cases for review of unassigned error).

## C. Best Interest Finding

Danny complains only that the trial court did not consider "all the weight of the evidence" as to the best interest finding under section 161.001(2). *See* Tex. Fam. Code Ann. § 161.001(2). He argues,

> So, when it comes to proving what's in the best interest of the children, and all one has to go on is a she said/he said scenario, the question begs to be asked, did she meet that burden of proof when, all things considered, either parent's answers could rightly be seen as self-serving, as each would see their position as being in the "best interest"?

He claims that, with regard to the best interest finding, Victoria did not meet the clear and convincing standard of proof necessary to terminate his parental rights.

Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (Vernon 2002). There is also a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include: (1) the desires of the child;

14

(2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

Victoria testified that Danny was in jail in Missouri for a felony conviction and that he had been convicted for sexual contact with a child and rape of a child. She testified that he had also been convicted for being criminally responsible for the death or serious bodily injury of a twelve-year-old child four or five years before, although that was not the crime for which he was

15

presently incarcerated. She also testified that he had never provided support to her and the children, that he had a drug problem, that he had been violent toward her and the children, and that she felt that it was in the children's best interest that his parental rights be terminated. Victoria added that she had been in her current relationship with another man for three years, that she hoped he would adopt her children, and that he (the other man) wanted this as well. The trial court granted to Victoria her requested relief.

In her response to Danny's request for disclosure under rule 194.2(c), Victoria stated:

> Respondent has been convicted of Rape-1st Degree-Sexual Intercourse with a person less than fourteen years old and upon release from prison the Respondent will have to register as a sex-offender, and Respondent has been convicted of selling alcohol to a minor. Respondent has never had a job nor has ever support[ed] the children. Respondent has abused alcohol and drugs.

Tex. R. Civ. P. 194.2(c) (stating that a party may request disclosure of "the legal theories and, in general, the factual bases of the responding party's claims or defenses").

Danny admitted that he had been incarcerated for second-degree rape but not first degree rape as Victoria stated in her discovery response. And he stated that his alleged conviction for "selling alcohol to a minor" was actually for his own underage drinking. Danny admitted that he was convicted of

16

vehicular manslaughter, but he claimed that his passenger, who died, was approximately twenty or twenty-one years old, "making her, presumably, not a child in the eyes of the law."

Danny attached a brief work history showing that he had been employed with one company from 1999–2000; worked for Dairy Queen for two months in 2000; performed freelance construction and carpeting from 2000–2001; and went on social security disability because of injury in a serious car wreck from 2001–2004. He suggested that the allegations of physical and verbal abuse fell under "normal and 'societally acceptable' forms of disciplinary action" because Victoria did not present any police reports, "Department of Family Services" reports, or medical records to back up the claims.

Danny complained that Victoria had cut off his contact with his children while he was incarcerated. He stated that if the court ordered him to take any parenting classes or supervised visits, he would "gladly" do that. Danny averred that he loved his children, that he had "taken complete responsibility for [his] actions and [had] great remorse," and that his parental rights should not be terminated. He stated that, while incarcerated, he had taken anger management and G.E.D. classes, participated in job corps, placed himself on the waiting list for Narcotics Anonymous, and continuously sent Christmas presents and birthday cards to his children.

17

Based on this record, the trial court could have reasonably formed a firm conviction or belief that termination of Danny's parental rights would be in the children's best interest. *See C.H.*, 89 S.W.3d at 28. Notwithstanding Victoria's testimony, Danny's own admissions about his criminal history contradict his argument that termination of his parental rights would not be in the children's best interests. And if the trial court chose to believe Victoria's testimony, it could reasonably have found that Danny never financially supported the children, that he was violent, that he had a drug problem, and that, contrary to Danny's assertions, he was unlikely to change. Therefore, we overrule Danny's second issue.

## V. Conclusion

Having overruled Danny's two issues, we affirm the trial court's order terminating Danny's parental rights in C.M.R., D.C.R., A.N.R., and D.R.R., II.

PER CURIAM

PANEL: MCCOY, J.; CAYCE, C.J.; and GARDNER, J.

GARDNER, J. concurs without opinion.

DELIVERED: November 20, 2008